And we'll hear argument next in Bosque v. Emily Realty, 19-2203. Mr. Venditti. Thank you, Your Honor. Good morning. This is a case on appeal from a summary judgment. Defendant moved for summary judgment, and their main argument was the statute of frauds. Plaintiff proposed on an electronic signature statute argument. And the lower, the district court's main conclusion was that text messages do not equal a writing, and that the statute of frauds was not satisfied. That therefore puts the defendant in the district court against a great weight of our economy, which is an e-commerce economy. And just this week, for example, you could see that three brick and mortar retailers have filed for bankruptcy, like J. Crew, J.C. Penney, and Neiman Marcus. It is going against the great weight of our culture, where the major artifact of everybody is a personal electronic device. Defendant is in the impossible position of saying that a text, an email, is not an electronic record. Defendant is also in the impossible position of saying that clicking a mouse or hitting an enter key is not an electronic process. And that goes completely against the laws of science, the laws of physics, the law of electricity. Additionally, you have the district court add requirements that do not appear in the electronic signature statute. District court cited two unpublished cases, and what the court wanted, things like contact information, job title, that kind of thing, they were, those requirements aren't in the electronic signature statute, and they're unsupported by the cases cited. Those two cases did not hold good name and contact information required. And even in defendant's brief in opposition, opposing counsel agreed with that. Regardless, even if the statute required it, or those cases required it, these text messages have plaintiff's name, defendant's name, defendant's LLC name, plaintiff's telephone number, defendant's telephone number, defendant's tax ID, defendant's attorney's name. And the emails have plaintiff's job title and address, and also defendant's attorney's contact information. There were over 500 lines of text messages, not to mention several key emails. So clearly, even by the requirements of Judge Ramos, the requirements have been met. Clearly, the lower court, the district court was not looking at facts in a light favorable to the responding party on that motion for summary judgment. Defendant merely cited three non-New York or New Jersey cases from over 15 years ago, including lower court cases. Meanwhile, right here in New York, within the past few days in the Southern District, I argued a motion where Judge Rakoff said that my client's clicking of a field on a computer screen that said, I agree, was a binding contract. So that sent a case from my client against Google doing business as YouTube. It sent that case back to California. Clicking a mouse, clicking I agree is a contract in the Southern District. That's the current, not even trend, it's reality. And what defendant is doing is a really antiquated 20th century kind of argument. Before I get into any questions in the three minutes, I do want to go to the next major error of law of the court. The district court usurped the jury of its role and authority in fact, credibility. Mr. Lano, one of the points you argue in your brief, very briefly in your brief, is you say that one of the aspects of your fraud claim is the failure of the defendant to reveal that it had made an exclusive brokerage contract. Although it revealed that it had another brokerage contract, it didn't say exclusive. What's the significance of that? If the defendant has an exclusive listing with a realtor, another realtor, that binds that defendant to the deal with the other realtor and it locks him in. Now, even if it was either communicated or implied that there were other brokers, and even if... What does locks him in mean? When you have an exclusive listing, it means that that broker is the only one allowed to market that property and sell it. Therefore, defendant should not have even communicated or entertained anything or started anything with plaintiff. He should have just stayed put and dealt with his exclusive broker. The exclusivity was the material fact, not communicated. Neither in the district court nor in this court did you give any explanation of the In addition, you don't mention it at all in the complaint. The complaint doesn't contain the word exclusive, I don't think. In the district court, the district court apparently failed to understand any significance to the word exclusive because it didn't discuss it at all. Why shouldn't we regard that claim as simply forfeited and not before us? Well, it was not stated... Can you explain a view of your failure to give any explanation, either below or here, as to what was the significance of exclusive? It was not set forth in the complaint because that was a fact that came out in discovery. In the moving papers and the oppositional papers and in the brief for this court, we did focus on that particular fact with regard to defendants stating that we had a redundant claim or for the theory that saying you weren't going to complete the deal and that theory of liability was not really what the fraud claim was about. In terms of defining quote-unquote exclusive, we felt that it wasn't that much of a term of speaks for itself as a phrase and it's not that esoteric. That is probably why we didn't give weight to that issue. Can you give us page references where you claim that there was briefing either in this court or in the district court addressing the significance of the failure to reveal the exclusivity? If you don't have it now, you can do it by letter. You can do it by letter afterwards to us, if you don't have it now, the page reference. I might have to take you up on that, Your Honor. I don't have that at my fingertips. Let me just quickly look at that. Page 21 in the brief, third paragraph down, we said that the material fact for the fraud claim was defendant's failure to reveal or communicate an important present fact that defendant LLC had on an exclusive listing for marketing the businesses. We cite the place in the record which would have been our counterstatement of facts, paragraphs 136 through 137. Now, I cited some cases there. At this point in time, I don't believe those cases were about what exclusive listings mean. I think that was more about fraud by not communicating and being silent on a material fact. Once again, just in terms of general experiences, professionals or even adults who own property or have bought or sold property or dealt with a real estate broker and that kind of thing, which I think is not common, but I think it's routine enough that the court and the attorneys have experienced it. I do not believe that exclusive is that esoteric or vague or concept that it warranted a special case citation. That's just my personal view. The main point in terms of the whole theory of liability and the cause of action was, even if Tyee Bosque knew that he was in competition and defendant said, first one to get me a signed contract and the deposit wins, okay, plaintiff knew there was out there that he was competing with, but he didn't know that that competition was rigged and that other party would win regardless. My client did, in fact, win. He did get the buyer with the deposit of $250,000. He did get the signed contract. He won on defendant's own terms. So, he should have then had the deal that closed and been paid the finder fee, broker fee, and it would have never happened, though, with defendant Lafrieda in an exclusive listing, which he had. And he then went with the other party. Let me just go back to your issue about whether or not it was a signature. I just want to make that every text message satisfies the New Jersey Uniform Electronic Transactions Act. That's not your argument, is it? That just by sending a tax, that that's a signature? Because I don't think any court has ever said, just by virtue of sending a tax, that the signature requirement is satisfied under that act? No court, there's a lot of Not exactly, because under the language of the statute, there is that final phrase, which is more or less saying an electronic process or sound or symbol that shows intention or Right, an intention to sign. An intention to sign, right? So, that part of it, yeah. Your argument is that you don't need a formal name, or contact information at the end of an email or text to satisfy that. That's your argument, I think, right? Well, that's what I think the district court was trying to say. I think the two cases were DeBellis and Cam. And one of them, the party had perhaps his full name and a title. I forget what the title was, but his job. One, he just had the name Lou, but my question is... So, it's clear from that case, which is a New Jersey State case, and I think all the other cases that you need something at the end of the text or the email that could be the intent to sign. It doesn't have to be something formal, it could be just a name. But here, and you made reference to all these things on all these different emails, but you have to look at the text that you're claiming or establish the contract. And you can correct me if I'm wrong, but on those texts that you're saying, this is where the contract was established. There's nothing in those texts and not a single one of them where your client or the opposing party used something at the end of the text, their name or any other indication that would show an intent that this was to be a signature. Am I wrong about that? Well, the district court on summer judgment motion clearly has a standard of review to look at the facts and make the inferences favorable to the non-moving party. Plaintiffs submitted over 500 lines of text messages. You can't just parse out this or that to slam it. You've got to look at the sum total of evidence. You have all of those emails on that key term of the fee. That fee was repeated twice by Lafayette. There were two times where he stated that the fee was 500. There was a course of email, pardon me, text messages showing that it went from 550 down to 500. That corroborates it. Another thing is you've got external evidence corroborating his final version of the sales agreement with the buyer listed plaintiff as a broker. You have multiple places where there's evidence of the intention, including the text messages as well as a contract. I don't think there's any question at all that there was intention. Even after that, you had descendants saying, you know, send over a contract. My question was on any of those texts that you're referring to that establish the context. Was there anything at the end of the text, anything that would constitute a name, a signature, anything, nothing formal, but anything on those particular texts? Well, he's got a, the signature is aligned with a unique cell phone number, which is virtually your identifier. People use cell phones now for bank transfers, for a number of different things. It is an identifier. I think that part of the statute, that second phrase of the statute was filled with the telephone number and the sum total of evidence on all of it. To then turn the clock back to requiring a name, job type, title, whatever on each and every text message or email is just not the way people communicate or even do e-commerce. Mr. Leno, so we'll hear from you on rebuttal. We'll hear now from Ms. Jettleson. Thank you. Thank you. Good morning, Your Honors. Jonathan Edelstein for the defendants' appellees. As a threshold matter, the district court was correct in finding that New Jersey law applied. The center of gravity test, in fact, was overwhelmingly toward New Jersey. The location of the businesses, it was in New Jersey. They owned buildings and real property in New Jersey, and they were New Jersey licensed, which is a factor that the relevant case law says is entitled to the heaviest weight. There were numerous other ties to New Jersey as well that were detailed in our brief. There's certainly some ties to New York via Mr. Bosk's office, but the district court correctly found these are overwhelmed by the factors pointing to New Jersey. This is not a close call. Now, second of all, to address the issue of the electronic signature, the New Jersey uses the Uniform Electronic Transactions Act. Since it uses a uniform act, case law from other states that use the same law is relevant. We cited case law in states from the UETA that use the UETA. This case is not 50 years ago. If you look at page 27 of the appellee's that hold that automated headers on text messages or emails don't qualify as a signature. In the Dulles v. Hollihan, the U.S. District Court for the District of New Jersey held likewise. Now, the UETA does not hold that just any electronic process is a signature. It has to be an electronic process that indicates an intent to sign. The to and from headers don't indicate an intent to sign. They just indicate that a message has been sent. Sending a text message is very different from clicking I agree because the very fact that there's an I agree next to the box you click shows that the electronic process that you're doing evinces an intent to sign. That is not present here. In addition, the plaintiff is arguing against the straw men. The District Court never held that an electronic signature has to include name and contact information. The District Court cited a case that said name and contact information was enough. It parenthetically cited that case, but it didn't say that name and contact information was the standard. That was just a parenthetical description of the case it cited. Here, there was not even a name, let alone contact information. There was nothing that even said, you know, sign Joe. There's not an electronic process here that any court has ever recognized as constituting a signature. I know on counsel just now discussed what he believes is corroboration that there was an intent to form an agreement. Again, intent to form an agreement is not the same as a signature. The New Jersey statute of frauds is very specific that there has to be assigned writing. If that requirement could be overcome, every time the plaintiff can point to some factor that indicates an intent to agree, then there would be nothing left of the writing requirement. Then, it would essentially be any oral agreement qualifies, which is not what the New Jersey legislature intended. Do we have to wade into this area of New Jersey law and the UETA? In other words, can't we on these facts decide that the responsive text message shows that there was no agreement? Yes, I believe that that's true. We did argue in the alternative in our brief that even if you take all of the text messages, all they amount to is an unenforceable agreement to agree because, among other things, the plaintiff, Mr. Bosk, repeatedly told Mr. Lafrida over the text messages that a written agreement would be done, that it was on So, these messages under either New Jersey or New York law did not amount to an agreement. They amount to maybe an intent to form an agreement later. So, yes, I would say that this court could rule for the defendants and affirm the district court either on the basis that there was never a contract formed, which is also quite clear. On that issue, though, there was this text that your opposing counsel mentioned where first one with a contract and a deposit wins. So, if we bypass the Electronic Transaction Act, wouldn't that create an issue of fact then because of this whole issue about the authentication of the contract, which the district court did not decide? Am I missing something? I believe that first lady wins is not specific enough to constitute a contract. Among other things, first lady wins didn't specify what the first lady would win. So, there are terms that are missing that would render that text message in isolation or even in its context with the plaintiff himself saying that a written agreement would follow. I would also point out that in the papers below, the text messages that allegedly constituted the contract changed. In the plaintiff's interrogatory responses, they pointed out four specific ones. By the way, the interrogatory responses also characterized those text messages as unsigned. This is the plaintiff's words, not mine, unsigned. Then, in the summary judgment motion, they said, well, the contract isn't just those four. It's all of the text messages. I think that if the court is to expand this and consider all of the text messages, then it has to consider, for instance, the text message where the plaintiff said, if the sale doesn't close, you owe me nothing. There were a couple of text messages to that effect. Also, if the court is to consider all of the text messages, then it has to include the text messages where the plaintiff is saying written agreement will follow. Even looking at these constitute the contract that he claims exists, which, in addition, is contrary to all common sense to contend that on a prospective $4 or $5 million deal that a business broker is entitled to 10% whether or not the contract, whether or not the sale closes. That's just not the way the It sounds to me as if it might be put slightly differently, consistent with your point that it might be sufficient to constitute a contract, but that contract would include the term that without a closing, there's no payment. Yes, I would agree with that as well, Your Honor. On that point, Mr. Elsey, isn't there a text where essentially Mr. Bosk says, don't close, send deposit back, you owe me nothing? So he's confirming that that would be part of the contract, right? Correct. That's exactly what the text message says, Your Honor. If I may briefly address the fraud issue. To begin with, the New Jersey case law holds that the statute of frauds is not complied with. The plaintiff cannot evade dismissal by repackaging the claim as quasi-contract or tort. But independently of that, a cause of action for fraud under New Jersey law, and for that matter, New York law, requires reliance, and there is not a shred of evidence. I mean, in addition to the fact that, as Your Honor pointed out... I don't think I agree with you there. If I understand the state of facts, the defendant told the plaintiff, I've engaged another broker, but declined, but did not reveal that he exchanged the other broker on an exclusive basis, which was the fact. And as I understand the exclusive basis, although I don't purport to have expertise in this, my understanding is a little different from what your adversary said. It doesn't mean that another contract can't close. It means that the broker who has an exclusive, during the term of exclusivity, will get his brokerage commission on any sale, regardless of whether he bought the contract, bought the buyer or not, or had any role in the sale that occurred. Now, it seems to me that the evidence shows that without awareness of this exclusivity feature, which would provide a huge disincentive for the plaintiff to invest time or money in finding a buyer, because the dice were loaded against the defendant closing with such a buyer, if the defendant would have to pay two commissions, one to the plaintiff and one to the exclusive broker. The plaintiff expended time and money in finding the Rosenberg buyer, and very likely wouldn't have done that if he had known that the other side had an exclusive. So, what's your answer to that? Why is that a showing of prejudicial reliance on a fraudulent omission to reveal a highly pertinent fact? Well, because there's nothing from the plaintiff saying that this is the case. There's no affidavit from Mr. Bosk saying, I would never have agreed to sell this property if I had known that fact. There's nothing in his deposition saying, I would never have agreed to sell the property if I had known that fact. It would have been very easy. One can draw inferences that if one contract, accepting a contract was required to pay a million dollars in commission instead of half a million, that's a strong disincentive to accept such a contract. Well, in addition, however, the flip side of that, Doug, is that the contract that Mr. Bosk procured was for about a million dollars more in a sale price than the one that was eventually closed. So, Mr. Lafrida's incentive would have been to accept that contract even if he had to pay two brokerages. He didn't know what he would be able to sell it for at a later time when he closed the original one. He didn't know that he would be stuck with a lower price at a later time. He didn't even know he would be able to sell it at all. I mean, there was no reason for him to walk away from that contract. Other than that, as he attested, the other side was playing games. But just to return to my point, it would have been very easy for Mr. Bosk to put in an affidavit on summary judgment saying, I would not have agreed to sell the property if I had been informed of this fact. He did not. And I would point out also that part of the issue below... It's not whether he would have agreed to sell the property. It's whether he would have invested time and money in trying to set up a deal that was doomed to failure because it would require double commissions. Then he could have said that, Your Honor. He could have put in an affidavit saying, I would never have agreed to do this. But he didn't. And you know why? It's because he was hungry for this deal. He was the one who came to Mr. Lafrida and said, please let me sell this break into this conversation. I mean, to this transaction. And I don't think anything would have deterred him. I mean, he was practically salivating at this meeting to sell the property. He was, you know, he was the one who brought it up. I mean, Mr. Lafrida didn't say, can you sell this to me? It's admitted by both sides that it was brought up by Mr. Bosk. Did the plaintiff preserve this issue for this appeal? He did not. He did not. Why not? Because as the court pointed out, he did not explain in any detail why exclusivity was a material fact. I mean, the explanation that the court just gave was the explanation that the plaintiff should have given and did not cite any case law that's specific to that issue of whether failure to inform of exclusivity was a material fact. That the issue was not developed. It was mentioned in at most the conclusory fashion. And again, the New Jersey law is that if the statute of frauds is not complied with for a contract claim, you can't repackage it as a quasi contract or tort claim anyway. So I don't think the court even has to go there. I think that if the court does go there, that it should find that the claim is unpreserved and that there is no evidence of reliance. However, I don't think the court has to. I think that the district court decision was correct and should be affirmed in all respects. Thank you very much, Mr. Leno. Just on that very last point about preservation of issues for appeal, page A484, the appendix and page A482 through A484 is the amended complaint. Paragraph 88, causation is set forth as a direct result of defendant's intentional misrepresentation and or concealment of information the plaintiff was caused to sustain damages. Going back to our counterstatement of facts, A390 through about A392 are many facts talking about the fraud claim. So opposing counsel is not accurate stating that we didn't preserve that for appeal. In fact, the moving party defendant never really talked about causation and what would have happened whether or not that was revealed to him and that he didn't say I would have not worked. So that wasn't even part of defendant's moving papers. Going back to a couple of these arguments very quickly, defendant's argument that the first person to win is whoever gets the signed contract and deposit, to me that's very clear, it's very definite. All of that happened after the main point of contention, which was the fee. The fee was the real tough nut to crack on this broker contract. And when that was ironed out, then you had a definite agreement. And then when that comment, that text message, first person to get me a signed contract and deposit wins, that was after that. So that comment really happened after the contract. This comment or argument about plaintiff stating I'll get you a fee agreement. All of that also happened after the contract was formed. Plaintiff kept working. Defendant kept plaintiff working. Defendant never stopped the plaintiff. And in fact, at some point, the final version of the sales agreement said that Bosque was the broker. He generated the $250,000 deposit. So defendant is in another difficult and possible position to say that he didn't agree to that and needed some kind of fee agreement. Any fee agreement after that in writing would have been either just something cosmetic or a memorial. The contract was already formed. This whole argument about, quote, unquote, close the deal and you owe me, quote, don't close and you don't owe me. That was really at a point in time where we were at a breach of contract by defendant because he was not doing due diligence. He was not signing the contract, the sales agreement. And what plaintiff was saying was if there's no sale whatsoever, you don't owe me. He wasn't saying. Mr. Lano. Yes, your honor. I just want to go back. So in the amended complaint to which you pointed us, yeah. Is there any reference to the exclusive brokerage agreement? Once again, that was the fact revealed in discovery. So. But the amended complaint was filed, as I understand, after. Right. It was. You're right, your honor. Yeah. So so. So that's not the answer. So is there another answer as to why the amended complaint does not have any reference? I take it. Well, the answer to to the exclusive nature of this brokerage agreement. I think what's in there is adequate for a pleading and even just quickly taking a look at a 483 subparagraph G making misstatements about material relevant present facts. I think that would cover that. That's what you're relying on. I think. Yeah. Failing to notify or subparagraph that's right above that. Failing to inform plaintiff the defendant had already retained another broker of Alvea without the exclusive part of it. And but he did fail to disclose the plaintiff material facts about that. You know, at that point in time, that amended complaint was just to add a second plaintiff. And basically, the causes of action were all identical. We weren't at a point in time where anybody really had to answer. No, I just want to. I just wanted to to make sure that I fully understood just Laval or just Bianco. Do you have any further questions? Nothing for me. No, thank you. I'm going to say one final point, Your Honor. Even if the court were to. Yes, if the court corrected these glaring mistakes and errors of law as to the statute of frauds issue and taking away from the jury the issue of determining credibility of that signed contract, plaintiff still has a case. Even if New Jersey law applies, even if he's held to be a broker, plaintiff still has a case. Thank you very much. That's the benefit of your briefs. Thank you very much.